IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RONALD FULLER-WOODSON,        )
                              )
            Plaintiff,         )
      v.                       )        Case No. 1:26-CV-89
                              )
WEAVER, et al.,                )
                              )
            Defendants.        )

### MEMORANDUM OPINION

**Susan Paradise Baxter, United States District Judge**

Pending before the Court in the above-captioned case is a Motion for a Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction filed by Plaintiff Ronald Fuller-Woodson. ECF No. 21. For the reasons set forth below, this motion will be denied.

### I.    Introduction

On March 31, 2026, Plaintiff, an inmate at SCI-Forest, commenced this *pro se* civil rights against Correctional Officers "Weaver" and "Hulings," pursuant to 42 U.S.C. §1983. At this juncture, Plaintiff's "Amended Complaint" is the operative pleading. See ECF Nos. 23, 25, 26.[1]

Plaintiff's Amended Complaint asserts claims against Defendants Weaver and Hulings in both their official and individual capacities. It alleges violations of Plaintiff's Eighth

---

[1] Plaintiff's amended factual averments and legal claims are set forth at ECF No. 23, which is styled as his "Motion to Amend Complaint." On July 20, 2026, U.S. Magistrate Judge Maureen P. Kelly granted Plaintiff's motion to amend and directed the Clerk of Court to file the Amended Complaint at ECF No. 23. However, the docket entry at ECF No. 25, presently docketed as Plaintiff's "Amended Complaint," consists solely of a one-page "Memorandum of Law," which does not conform to the pleading requirements of Federal Rule of Civil Procedure 8. Plaintiff has also filed a declaration at ECF No. 26, which is presently docketed as a "Supplement." For present purposes, the Court collectively construes Plaintiff's filings at ECF Nos. 23, 25, and 26 as his amended pleading.

Amendment rights based on the Defendants' alleged deliberate indifference and failure to protect him from an assault by a fellow inmate. It also alleges violations of Plaintiff's First Amendment rights based on the Defendants' alleged retaliation in response to Plaintiff's efforts to obtain redress for perceived misconduct.

According to the Amended Complaint, Plaintiff was engaged in a heated argument with fellow inmate Juan Cristo Munoz ("Cristo")[2] on February 26, 2026. ECF No. 23, ¶10. During this argument, Cristo threatened to throw urine and feces at Plaintiff when he "came out for group." Id. While Defendants Weaver and Hulings were conducting "wellness rounds," they smiled and laughed at Plaintiff, which Plaintiff interprets as an acknowledgement of Cristo's threat "because B.M.U. program staff are stationed on the housing unit at the staff desk." Id.

Subsequently, Plaintiff was brought of his of cell and seated at the "restart desk," while Cristo was strip-searched by the Defendants. ECF No. 23 at ¶12. Cristo "took twice as much time being strip searched [as] the whole housing unit." Id. During the search, Defendant Weaver informed Cristo that he could not bring out a bottle, which allegedly contained the urine and feces that Cristo had threatened to "throw on" Plaintiff. Id. at ¶¶12-13. Despite Cristo being non-compliant, the officers allowed him to come out of his cell. Id. ¶13. Defendant Weaver allegedly asked Hulings whether he "still want[ed] to let [Cristo] out," and Hulings responded, "I don't give a f*ck, if he does anything we will just f*ck him up." Id.

Prior to Cristo exiting his cell, Defendants Weaver and Hulings pointed in Plaintiff's direction, laughed, and joked about sitting Cristo in the seat behind Plaintiff. ECF No. 23, ¶14. When Cristo exited his cell, he asked to sit behind Plaintiff. The Defendants denied Cristo's request "but allowed him to take two steps" in Plaintiff's direction, at which point Cristo spit

---

[2] The Court refers to this inmate in the same manner in which he is referred to in the Amended Complaint.

feces and urine on Plaintiff. Id. Several inmates then vowed to attack and assault Plaintiff if he told on Cristo. Id. ¶15. Plaintiff was seen by medical personnel at his cell and then lodged a grievance about the manner in which the Defendants had handled the strip-search of Cristo. Id.

Plaintiff claims that, shortly after he lodged his grievance, "both defendants began retaliating" against him by "grooming inmates in the program to assault [him]," telling inmates that Plaintiff was "a rat" and saying that Plaintiff "told on them and Inmate Cristo by writing the grievance[.]" ECF No. 23, ¶18. Plaintiff states that "[b]oth officers began to place [him] in a state of immenant [sic] danger, planning attacks, and setting up scenarios that would leave [him] vulnerable to assault." Id.

As an example, Plaintiff alleges that, on April 4, 2026, Defendant Hulings tried to "coerce" him to go to the "level 2 yard (unrestrained yard) with a rival inmate that was trying to assault [him]." Id. When Plaintiff refused, Hulings "began threatening" Plaintiff and "vowing to enter [his] cell and attack [him]." Id. ¶19.

On April 6, 2026, that same inmate, who was allegedly "tasked" by Defendants Weaver and Hulings "to assault" Plaintiff, approached Plaintiff's cell and sprayed a bottle of cleaning chemicals in his face. ECF No. 23, ¶19.

On May 5, 2026, Defendants Hulings and Weaver allegedly threatened to allow Cristo to spit on Plaintiff. ECF No. 23, ¶20. Plaintiff states that he and Cristo were placed in cage modules that were next to each other and the officers "attempt[ed] to open both cages at the same time" when Cristos had feces in his mouth. Id. Plaintiff refused to exit at the same time, however, and asked to speak to a supervisor. Id., ¶21.

Plaintiff claims in his Amended Complaint that Defendants Hulings and Weaver continue to retaliate against him because of pending litigation. ECF No. 23, ¶23. He states that both

3

Defendants have restricted him from making phone calls pertaining to this lawsuit and have threatened to move Cristo next door to him. Id. Subsequently, on July 4, 2026, Cristo was in fact moved to a cell adjacent to Plaintiff's, leading Plaintiff to file the pending motion for injunctive relief. Id. Plaintiff then submitted a separation request to the Program Review Committee, to no avail. See ECF No. 26 at 2.

Finally, on July 12, 2026, after Cristo threatened to throw a mixture of feces and urine at Plaintiff's door, Plaintiff asked corrections officers to close Cristo's food aperture. ECF No. 26 at 2. Defendant Hulings allegedly instructed that Cristo's food aperture remain open and, at some point thereafter, Cristo stuck his hand out of the aperture and threw urine and feces at Plaintiff's cell window and aperture two times. Id. Plaintiff states that, after this incident, "correctional officers left the mixture of urine and feces on [his] window, did not conduct an incident report[,] did not place the inmate in 'recovery status,' [and] congratulated him for throwing the waste at [Plaintiff's] cell[.]" Id.

## II.    Standard of review

Temporary restraining orders and preliminary injunctions are governed under the same standard. See Brown v. Wolf, No. 2:16-cv-1081, 2026 WL 691386, *1 (W.D. Pa. Jan. 21, 20216), report and recommendation adopted, 2026 WL 688634 (W.D. Pa. Mar. 11, 20216). A preliminary injunction is appropriate only where: (1) the movant demonstrates a reasonable probability of success on the merits; and (2) the movant demonstrates irreparable harm if the injunction is denied; (3) the issuance of an injunction will not result in greater harm to the non-moving party; and (4) the public interest would best be served by granting the injunction. Council of Alternative Political Parties v. Hooks, 121 F.3d 876, 879 (3d Cir. 1997); Opticians Ass'n of America v. Independent Opticians of America, 920 F.2d 187, 191-92 (3d Cir. 1990). As

4

the moving party, Plaintiff bears the burden of producing evidence to support the first two factors. *See Acierno v. New Castle Cty.*, 40 F.3d 645, 653 (3d Cir. 1994). Absent support for either of the first two factors, a court must deny the request for a preliminary injunction. *See id.; Adams v. Freedom Forge Corp.*, 204 F.3d 475, 484 (3d Cir. 2000).

Injunctive relief is an "'extraordinary remedy ... which should be granted only in limited circumstances.'" *American Telephone & Telegraph Co. v. Winback and Conserve Program, Inc.*, 42 F.3d 1421, 1426-27 (3d Cir. 1994) (ellipsis in the original) (quoting *Franks GMC Truck Center, Inc. v. General Motor Corp.*, 847 F.2d 100, 102 (3d Cir. 1988)). "Moreover, in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (internal quotation marks and citation omitted). Preliminary injunctive relief is "not a tool for prisoners to use to regulate 'in every way, every day, the terms and conditions of plaintiff's confinement simply because they are 'in court'....'" *Stiel v. Fed. Bureau of Prisons*, 2017 WL 2656646, at *4 (D.N.J. June 19, 2017) (quoting *Muhammad v. Director of Corrections*, 2009 WL 161075, at *1 (E.D. Ca. Jan. 22, 2009)). And because the pending motion implicates the administration of a state prison, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). "The federal courts are not overseers of the day-to-day management of prisons. Prison officials require broad discretionary authority as the 'operation of a correctional institution is at best an extraordinarily difficult undertaking.'" *Peterson v. Harry*, No. 2:24-CV-01591, 2026 WL 1975383, at *3 (W.D. Pa. Apr. 28, 2026) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566

5

(1974)), *report and recommendation adopted,* 2026 WL 1871826 (W.D. Pa. June 30, 2026) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974)).

### III.    Analysis

In his motion, Plaintiff indicates that he seeks to "stop both defendants from planning attacks against [him]" and "keep the defendants from using injury as a means to evade the practice of [his] protected conduct to petition against the government." ECF No. 21 at 3.  While the Court does not take Plaintiff's allegations of physical endangerment lightly, his suggestion that Defendants are planning future "attacks" on him is entirely speculative and predicated on conclusory statements and/or tenuous inferences, rather than specific language or concrete threats.  Plaintiff's averments regarding the February 26, 2026 incident do not suggest that the Defendants encouraged Cristo to assault Plaintiff with feces and urine.  On the contrary, his averments show that the officers conducted a strip-search of Cristo prior to the incident, interdicted a bottle of feces and urine, and denied Cristo's request to sit behind Plaintiff in the group session.  As for the April 6, 2026 incident in which a different inmate sprayed Plaintiff with cleaning chemicals, Plaintiff loosely avers that the Defendants "tasked" the inmate to do so; however, Plaintiff provides no further details to substantiate this claim.  Plaintiff alleges that Hulings tried to "coerce" him to go to the yard on April 4, 2026 and made a generalized threat of violence, but his allegations suggests that no harm or violence came to pass from that incident.  Plaintiff also avers that Cristo was placed in an adjacent cell and that the Defendants endangered him on May 5, 2026 by "attempting to open both cages at the same time," but he refused to step out until he could speak to a supervisor.

As the movant in this case, Plaintiff must show "that [he] is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858

6

F.3d 173, 179 (3d Cir. 2017), *as amended* (June 26, 2017). To do so, he "must demonstrate a potential harm which cannot be redressed by a legal or an equitable remedy following a trial." *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). "The risk of irreparable harm cannot be speculative; mere risk of irreparable harm is insufficient—the movant must make a clear showing of immediate irreparable injury, or a presently existing actual threat; an injunction may not be used simply to eliminate the possibility of a remote future injury, or a future invasion of rights." *McCafferty v. Wolf,* Case No. 2:20-CV-02008, 2021 WL 1340002, at *4 (W.D. Pa. Apr. 9, 2021) (alterations and internal quotes omitted) (citing *Holiday Inns of Am. v. B & B Corp.*, 409 F.2d 614, 618 (3d Cir. 1969); *Continental Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980); *Hadeed v. Advanced Vascular Res. of Johnstown, LLC,* No. 3:15-CV-22, 2016 WL 7176658 at *3, 2016 U.S. Dist. LEXIS 169709 at *8 (W.D. Pa. Dec. 8, 2016)).

Based on the facts set forth in the Amended Complaint, Plaintiff has not demonstrated a likelihood of irreparable injury in the absence of injunctive relief. And under the law of this Circuit, "[a] failure to demonstrate irreparable injury must necessarily result in the denial of a preliminary injunction." *Ace Am. Ins. Co. v. Wachovia Ins. Agency Inc.*, 306 F. App'x 727, 732 (3d Cir. 2009) (citations omitted). Because Plaintiff's allegations of future harm are too speculative and tenuous to show irreparable injury in the absence of injunctive relief, his request for injunctive relief must be denied.

Plaintiff also indicates in his motion that he is seeking a TRO that would restrict Defendants Hulings and Weaver from working on the K-B housing unit where Plaintiff is housed. Giving due consideration to principles of federalism, the Court would be disinclined to grant this form of relief in any event, as it necessarily implicates matters of prison administration

7

and institutional security as to which the Pennsylvania Department of Corrections must be given serious deference.

Finally, it should be noted that, throughout Plaintiff's pleading and motion, he complains that Lt. Deimer improperly failed to preserve and/or provide certain video footage which, Plaintiff believes, would substantiate his claims. Plaintiff also suggests that Lt. Deimer improperly handled a grievance that was directed against herself. To the extent Plaintiff seeks injunctive relief against Lt. Deimer, his motion fails because Lt. Deimer is not a party to this lawsuit. *See Peterkin v. McIntyre*, Civil Action No. 25-02137, 2025 WL 3295527, at *1 (D.N.J. Nov. 26, 2025); *Kramer v. City of New Kensington*, Civil Action No. 13–606, 2014 WL 5464848, at *3 (W.D. Pa. Oct. 27, 2014) ("The general rule is that a court may not enter an injunction against a person who has not been made a party to the case before it.") (internal quotation marks and citation omitted).

**IV.    Conclusion**

Because Plaintiff has failed to demonstrate any entitlement to a temporary restraining order or preliminary injunctive relief, his motion at ECF No. [21] will be denied. An appropriate Order follows.

_Susan Paradise Baxter_
SUSAN PARADISE BAXTER
United States District Judge

8